BRIAN J. STRETCH (CABN 163973)
United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

GARTH HIRE (CABN 187330)
Assistant United States Attorney
    1301 Clay Street, Suite 340-S
    Oakland, California 94612
    Telephone: (510) 637-3723
    Facsimile: (510) 637-3724
    E-Mail:    Garth.Hire@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 15-00290 PJH |
| v. | UNITED STATES' SENTENCING MEMORANDUM |
| SOPHIA CHERISE WEST, | |
| Defendant. | |

# I. INTRODUCTION

The government recommends and respectfully requests that this Court sentence defendant to a 15-month term of imprisonment, a three-year term of supervised release with conditions to be determined by the Court (and the special Suspicionless Search and Community Service conditions agreed to by defendant in her plea agreement), a $200 special assessment, and forfeiture.

# II. FACTUAL AND PROCEDURAL BACKGROUND

## A. Defendant Violated Airport Security on Multiple Occasions and Transported Marijuana for Sale to Alaska

In the early morning hours of March 3, 2015, defendant Sophia Cherise West (West or defendant) entered the Oakland International Airport. (Presentence Report (PSR) ¶ 26). After she submitted herself to security screening at the Transportation Security Administration (TSA) checkpoint, defendant walked to a phone bank area in Terminal 2 (the Vestibule). (*Id.*). Defendant met with Southwest baggage handler and co-conspirator Keith Mayfield (Mayfield) inside the Vestibule and Mayfield handed defendant luggage which contained thirteen packages containing a total of 5.798 kilograms of marijuana. (PSR ¶ 30). Defendant was approached by law enforcement personnel and she admitted that she had gone through security with one bag but now had two. (PSR ¶ 26). Defendant said that she received the bag from an individual she knew as "Big Little Daddy." (PSR ¶ 26). She granted the deputies consent to search her bag and they discovered the marijuana. (PSR ¶ 26).

Defendant was interviewed after being advised of her <u>Miranda</u> rights and she confessed that she was flying to Anchorage, Alaska, and was going to give the bag containing the marijuana to a man who would come to her hotel room. (PSR ¶ 27). Defendant further admitted that she had flown to Alaska on prior occasions after receiving a bag in the Vestibule from "Big Little Daddy." (PSR ¶ 27). Defendant was paid $1,000 for each trip and previously flew to Alaska on October 21, 2014, and January 26, 2015. (PSR ¶ 28). Defendant was shown a photograph of Mayfield by the deputies but lied and said she did not recognize him as "Big Little Daddy" despite receiving videos on her mobile phone of Mayfield from his telephone number that was indexed in defendant's mobile phone as "Big Lil Daddy." (PSR ¶ 29). By her own admission, defendant indicated that she wanted to participate in the smuggling scheme after

she learned about it from others that were involved and discussing the operation. (PSR ¶ 73).

On May 16, 2015, defendant, along with numerous other co-conspirators was arrested on a federal criminal complaint. On May 28, 2015, defendant was indicted for various offenses relating to narcotics trafficking and airport security violations. (PSR ¶ 1). On January 27, 2016, defendant pled guilty pursuant to a plea agreement to possession with intent to distribute marijuana and violating airport security. (PSR ¶ 2).

## III.    SENTENCING GUIDELINES CALCULATIONS

The parties agreed to the following guidelines calculations in the plea agreement, although defendant also reserves the right to argue for a two-level minor role reduction:

      a.      Base Offense Level, U.S.S.G. §§ 2D1.1(a)(5), (c)(13):      14
              (at least 10 but less than 20 kilograms of marijuana)

      b.      Acceptance of Responsibility:      - 2

The United States Probation Office (USPO) agrees with the calculations in the plea agreement and does not believe that minor role is appropriate. (PSR ¶¶ 38-46). Both the USPO and the government therefore believe that defendant's ultimate offense level is 12. (*Id.*). Defendant has four criminal history points – two of which are for committing the instant offense while on probation – and therefore falls within criminal history category III. (PSR ¶ 55-57). Thus, the defendant's guideline range is 15-21 months. (PSR ¶ 96). The government recommends a low-end guideline sentence of 15 months' imprisonment. Such a sentence properly reflects defendant's offense conduct and criminal history while also serving as a deterrent for others who might consider violating airport security measures for profit.

## IV.    STATUTORY SENTENCING FACTORS

### 1.    Nature and Circumstances of the Offense

The nature and circumstances of the offense demonstrate the need for a 15-month sentence. Defendant was part of a conspiracy involving airline personnel to circumvent TSA security measures and smuggle marijuana in unscreened luggage for re-sale. Defendant repeatedly violated airport security measures for profit. Worse yet, defendant committed this crime while on probation. The nature and circumstances of this offense clearly justify a guideline sentence of 15 months.

## 2. History and Characteristics of the Defendant

### a. Criminal History

Defendant has been arrested and convicted for numerous crimes throughout her life. Some of defendant's criminal history is set forth below.

<u>May 1, 1993 (Age 22): Burglary</u>

Defendant was arrested by the Torrance Police Department for stealing merchandise from a department store. (PSR ¶ 49). Defendant was convicted of a misdemeanor and sentenced to 2 years probation, four days jail, and a suspended sentence of 120 days jail. (*Id.*)

<u>July 19, 1993 (Age 22): Carrying a Concealed Weapon on Person</u>

Defendant was arrested by the Oakland Police Department only two months after being arrested for burglary in Southern California. Defendant was convicted and sentenced to 24 months probation and two days jail. (PSR ¶ 50).

<u>November 30, 1994 (Age 23): Possess Narcotic Controlled Substance and Marijuana</u>

Defendant was arrested by the Oakland Police Department but no charges were filed. (PSR ¶ 62).

<u>September 18, 1995 (Age 24): Possess Concentrated Cannabis</u>

Defendant was arrested by the Oakland Police Department after being observed engaging in sales of marijuana. Officers recovered 23 baggies of marijuana from defendant's purse along with $221 in cash. (PSR ¶ 58).

<u>June 4, 1996 (Age 25): Possess Marijuana for Sale</u>

Defendant was arrested in possession of a plastic bag containing marijuana and $457 in cash. No charges were filed. (PSR ¶ 59).

<u>May 28, 1999 (Age 28): Theft of Personal Property</u>

Defendant was arrested by police in Marin and was ultimately sentenced to a three-year term of probation and 120 days jail. Probation was repeatedly revoked. (PSR ¶ 51).

July 5, 1999 (Age 28):  Grand Theft

Defendant was driving a stolen rental car when she was pulled over by the Oakland Police Department.  Defendant identified herself as "Kimberly Nicole Johnson" and possessed a California ID in that name with defendant's photograph.  Defendant also possessed a second ID in the name of Sophia Green with her photograph.  Defendant also had two credit cards in both names.  After being confronted about the two IDs defendant lied and said that Green was her twin sister before admitting that she was, in fact, Sophia Green.  Defendant was convicted of misdemeanor Grand Theft:  Money/Labor/Property and sentenced to two years' probation and 30 days jail.  (PSR ¶ 52).

November 12, 2012 (Age 39):  Driving Under the Influence of Alcohol

Defendant was stopped for speeding at 1:21 a.m. by the Alameda County Sheriff's Office.  Defendant admitted she had been drinking and a preliminary alcohol screening device (PAS) determined her blood alcohol level to be at least .167.  Defendant was convicted and sentenced to three years' probation and 2 days jail.  (PSR ¶ 53).

April 12, 2012 (Age 41):  Driving Under the Influence of Alcohol

Defendant was arrested after colliding with a bus and having a blood alcohol level of at least .15.  Defendant was convicted and sentenced to 36 months' probation and 20 days of weekend jail.  (PSR ¶ 54).  Defendant was on probation for this crime at the time of the instant offense.

### b.     *Personal Characteristics*

For roughly seven years defendant appears to have had an excellent job at Kaiser Permanente as a full time claims processor making $24.78 per hour.  However, defendant was terminated after she misused her position to access the medical records of a woman who was in a relationship with a man that defendant was also dating.  (PSR ¶ 91).

### 3.     Need to Reflect the Seriousness of the Offenses

The offenses in question involve a long-term conspiracy to violate airport security in an effort to engage in nationwide narcotics trafficking.  A guideline sentence of imprisonment sufficiently reflects the seriousness of the offenses in this particular case.

### 4. Deterrence of Criminal Conduct

By imposing a 15-month sentence on defendant the Court has the opportunity to have a strong specific and general deterrent effect. First, defendant will be specifically deterred from committing more crimes by knowing that another prison term awaits her should she re-offend. Most importantly, this Court has an opportunity to send a strong signal to others who are in a position to violate airport security measures for profit that if they do so they will go to federal prison. A shorter prison sentence or a non-custodial sentence would have the opposite effect. Through the 15-month sentence requested by the government and the USPO, this Court can generally deter others from violating airport security measures to profit from criminal activity and thereby ensure the safety of the flying public and stop the spread of narcotics from Northern California to other communities in the United States.

### 5. Need to Protect the Public

The public needs to be protected from recidivist criminals, like defendant, who are willing to violate airport security to maximize their profits.

### 6. Need to Provide Defendant with Education

The need to provide defendant with education and vocational skills, while important in most contexts, must be placed in a subordinate position to the important considerations of deterrence, protection of the public, and the need for the sentence to reflect the seriousness of the offense.

## V. CONCLUSION AND SENTENCING RECOMENDATION

For the foregoing reasons, the government respectfully requests that the Court sentence defendant to a 15-month term of imprisonment, three years of supervised release (with conditions to be fixed by the Court and the special Suspicionless Search and Community Service conditions agreed to by defendant in her plea agreement and recommended by the USPO), no fine, a $200 special assessment, and order forfeiture of a black Samsung Galaxy Note 3.

DATED: May 25, 2016

Respectfully Submitted,

BRIAN J. STRETCH
United States Attorney
_____/S/_____
GARTH HIRE
Assistant United States Attorney