Edward W. Swanson, SBN 159859
August Gugelmann, SBN 240544
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, California 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9010

Attorney for Defendant
SOPHIA WEST

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                        Plaintiff,<br>    vs.<br><br>SOPHIA WEST,<br><br>                        Defendant. | Case No. CR 15-0290 PJH<br><br>**DEFENDANT SOPHIA WEST'S SENTENCING MEMORANDUM** |

Defendant Sophia West stands convicted of possessing with intent to distribute 15 kilograms of marijuana, 21 U.S.C. § 841(a)(1), and of entering an airport in violation of security requirements, 49 U.S.C. § 46314(a). She respectfully requests that the Court sentence her to probation.

**I.    The Court Should Grant a 2-Level Reduction for Minor Role**

Ms. West agrees in part with the PSR's guidelines calculations. As set forth in the plea agreement and the PSR, the base offense level is 14, and Ms. West should receive a two-level reduction for acceptance of responsibility. Plea Agreement, ¶ 7; PSR ¶¶ 38, 45. However, the parties agreed that Ms. West would be permitted to seek a two-level reduction based on her

minor role in the offense conduct, pursuant to U.S.S.G. § 3B1.2(b). Plea Agreement, ¶ 7. Although the Probation Office declined to include this reduction, it is appropriate here.

Section 3B1.2 allows for a decrease of 2, 3, or 4 points for defendants who are "substantially less culpable than the average participant in the criminal activity." Application Note 3(A). As the Commission explained, the Court may reduce the offense level for "a defendant who is accountable under 1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in the criminal activity." U.S.S.G. § 3B1.2, Application Note 3(A)2. The Application Notes provide the following example:

> For example, a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs and who is accountable under § 1.3 only for the quantity of drugs the defendant personally transported or stored may receive an adjustment under this guideline.

The Commission's example perfectly describes Ms. West. Her role in the offense was limited to transporting drugs, and she has pled guilty to only the quantity of drugs she personally transported, not the amount of drugs attributable to any other individual alleged to have participated in the charged conspiracy. *See* Plea Agreement, ¶ 2.

The Application Notes provide further guidance that demonstrates the appropriateness of a two-point reduction for Ms. West. Note 3(C) states that "a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline." That description matches Ms. West. As described in the PSR, there was a criminal conspiracy pursuant to which numerous baggage handlers worked to circumvent security regulations and smuggle narcotics onto planes leaving Oakland airport. Proceeds of this illegal activity were deposited at banks across the

2

**Defendant's Sentencing Memorandum**
*United States v. West*, CR 15-0290 PJH

country and ultimately withdrawn from banks in Northern California. PSR, ¶¶ 11-14. However, Ms. West had no proprietary interest in this enterprise. She was simply paid to perform a discrete task – ferry luggage containing marijuana from Oakland to Anchorage. For this, she was paid a flat fee, PSR ¶ 28, regardless of the success or failure of the criminal enterprise as a whole. Her role, relative to the scope of the conspiracy, was a minor one.

Application Note 3(C) also sets forth a series of factors for determining when to apply the adjustment. Each weighs in favor of a reduction.

First, the Court is to consider "the degree to which the defendant understood the scope and structure of the criminal activity." There is no evidence Ms. West had any knowledge of the scope or structure of the drug-smuggling operation. She was involved with only two individuals – the man who drove her to the airport and someone she knew as "Big Little Daddy." PSR, ¶¶ 27-29. As she told agents when she was arrested, a ticket would be waiting for her at the airport, and "Big Little Daddy" would give her the bag once she had passed through security. There is no indication she had any idea how many other people were involved or in what roles, or what the structure of the organization was (if any).

Second, the Court should examine "the degree to which the defendant participated in planning or organizing the criminal activity." Ms. West participated in no planning or organization of the activity; she simply travelled when and where she was instructed to go.

Third is "the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority." Ms. West had no decision-making authority. She was told when to go to the airport, and when she arrived, a ticket would be waiting for her; once she arrived at her destination, she was told where to go and to whom to deliver the bag, and then she returned home.

3

The fourth factor is "the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts." Although she transported marijuana on more than one occasion, each time Ms. West's role was limited to that of a courier. She had no discretion in how, when, or where to perform that task. More importantly, her role was quite limited compared to that of the average participant in the charged conspiracy. The indictment describes a criminal undertaking dating from at least early 2013, charges 13 defendants, and lists 73 overt acts. Only three relate to Ms. West, all of which describe one occasion on which she transported marijuana. Indictment, ¶¶ 71-73. The conduct to which she has pled guilty dates from October 2014 and involves only three trips. Throughout the course of the conspiracy, other participants sourced the marijuana, found buyers, determined how to circumvent airport security, recruited couriers, selected delivery destinations, paid for transit, arranged for pickup and further distribution of marijuana at the destination, collected the proceeds, and determined where the money would go. Many of these participants had a far greater degree of responsibility and discretion than Ms. West had in performing her sole task.

Finally, the Court is to consider "the degree to which the defendant stood to benefit from the criminal activity." Ms. West was paid $1,000 for each trip. However, that was a flat fee, which she received regardless of the amount of marijuana she carried, the amount of money earned by the individuals who were directing the criminal activity, or the success of the conspiracy as a whole.

Thus, the relevant factors under the Guidelines all demonstrate that a 2-level reduction for minor role is appropriate in this case. *See United States v. Garcia*, 939 F.Supp.2d 1216, 1230

(D.N.M. 2013) (granting minor role adjustment for defendant who was recruited to transport heroin and had no authority over other participants in the offense).

In recommending against this reduction, the Probation Office acknowledged that "there is no dispute that [Ms. West] had a limited role in the conspiracy[.]" PSR Addendum, at 27. Nonetheless, the PSR argues no reduction is warranted because "she is only being held responsible for the amount of marijuana on that date even though by her own admission she smuggled marijuana on multiple occasions." *Id.* That is not the case. Ms. West is being sentenced not based on the 5 kilograms of marijuana she had when she was arrested but based on the total estimated amount of marijuana she transported during three trips. Plea Agreement, at 4.

To the extent the probation officer's argument is that a reduction is inappropriate because Ms. West's role is to be measured against only those marijuana shipments in which she participated directly, that is also in error. First, Ms. West's role in those three shipments was itself minor, as she did no planning role and had no discretion in how to execute her job. More fundamentally, the baseline for evaluating Ms. West's role is "all conduct within the scope of § 1B1.3," not just the "elements and acts cited in the count of conviction." U.S.S.G. Part B, *Introductory Commentary.* Thus, the Court must "look beyond the individuals brought before it to the overall criminal scheme when determining whether a particular defendant is a minor participant in the criminal scheme." *United States v. Rojas-Millan*, 234 F.3d 464, 473 (9th Cir. 2000). Such an enquiry is "particularly appropriate when sentencing members of a pervasive and far-ranging criminal enterprise." *United States v. Tankersley*, 537 F.3d 1100, 1110 (9th Cir. 2008); *see also*, *e.g.*, *United States v. Hernandez-Garcia*, 211 F. App'x 604, 605 (9th Cir. 2006) (remanding where district court failed to "conduct a factual inquiry into the role of the defendant

5

**Defendant's Sentencing Memorandum**
*United States v. West*, CR 15-0290 PJH

as compared to other participants"). As set forth above, Ms. West's role was minor in comparison to that of the average participant in the overall conspiracy.

The probation office also notes that Ms. West "had full knowledge she was transporting marijuana." PSR Addendum, at 27. That is true, but knowing possession of marijuana is an element of the offense; no defendant could ever receive a role reduction if it required a lack of *mens rea*. Next, the probation office notes that Ms. West "became involved in the offense after hearing about other individuals being involved." PSR Addendum, at 27. But as discussed above, Ms. West only knew the roles of two individuals – the man who arranged her travel and the man who gave her the bags. There is no indication she knew how many others might be involved in the conspiracy or in what capacities. Finally, the PSR notes that "the defendant profited from her conduct as she intended to receive and had been paid $1,000 on multiple occasions." *Id.* Again, while this is true, it does not weigh against imposing the reduction. Rather, as noted above, the fact that Ms. West received a flat fee regardless of the success of the criminal enterprise argues *for* granting the requested reduction.

Thus, the Court should reduce Ms. West's guidelines by two levels, to level 10. At level 10 and Criminal History Category III, Ms. West's guidelines range is 10-16 months, in Zone C of the sentencing table.

**II.     The Court Should Impose a Sentence of Probation**

Ms. West fully acknowledges the severity of the offense conduct. Not only did her conduct involve the transportation of drugs, it involved the circumvention of airport security measures, and that could carry far more dire consequences than illegal drug distribution. However, the sentence of 15 months incarceration recommended by the probation officer is

greater than necessary to achieve the goals of sentencing given circumstances of this offense and the nature and characteristics of this defendant.

First, although the recommended sentence is at the low end of the guidelines as the probation officer calculates them, under the guidelines with the two-level reduction, it is near the high end of the range.

Second and more fundamentally, such a sentence is greater than necessary given Ms. West's history and characteristics. As the PSR reveals, Ms. West's adult life can be divided into distinct phases. There was a period in her 20's where she was at loose ends, lacking steady employment and in trouble with the law. This was followed by a prolonged period during which she was fully employed and during which she engaged in no criminal conduct. After losing that job, she relapsed into criminal conduct, being convicted for driving under the influence and then for the instant offense. However, since her arrest, she has regained her footing, finding employment and complying with the law. Ms. West respectfully requests that the sentence the Court imposes reflect the circumstances that led to her conduct and enable her to build on her new-found stability.

Ms. West's mother died of a drug overdose when Ms. West was two years old, and Ms. West went to live with her maternal grandparents. (Her father, who died of a drug overdose much later, did not raise her.) She had a relatively stable and happy childhood. However, following the deaths of both her grandparents in the early 1990's, she entered a period during which, as she described to the probation officer, her life went downhill. She started associating with "the wrong people," as she put it. PSR ¶ 70. And as her criminal history report reveals, she started getting into criminal trouble. Starting in 1993, she was arrested multiple times and suffered convictions.

She found the motivation to turn things around when her daughter was born. Her friend Syreeta Monti emphasizes the importance of Ms. West's daughter to her life:

> First and foremost, Sophia is a mother. Being a mother in the African American community is already a challenge within itself. Before education, sometimes we're taught how to survive in the streets. Without Sophia, her daughter could've went down a road she'd be unable to walk away from. Without Sophia's influence in her daughter's life, she would most likely get a minimum wage job, and abandon the educational process completely. Instead she is attending San Diego State, for the past year with an outstanding grade point average.

Monti Letter, Exhibit B.

Most significantly, Ms. West found stable employment, working as a claims processor for Kaiser Permanente. While so employed, she had no arrests and no convictions. But she was fired because of an act of bad judgment: she violated company policy and accessed the health records of a woman with whom she suspected her boyfriend had had a relationship. The loss of her job triggered a downward spiral similar to what she had experienced after her grandparents died. As she writes:

> When [I lost my job] from me being a total idiot I became lazy and irresponsible. I let unemployment take care of me/us for two years. And when that ran out I let my daughter go stay with family friends, people who have been in my life since I was a teenager, because I didn't want to burden her at a young age or hinder her academics. . . . So with her being safe, and after unemployment ran out my hunt for a job was unsuccessful, I couldn't find anything for a long time. I felt low and began to lose hope. So I started doing illegal acts and I was caught up and arrested in this case.

West letter, Exhibit A. After losing her job, Ms. West suffered two convictions for driving under the influence before her arrest in this matter; the fact that she was on probation for one of those offenses increases her criminal history category from II to III.

Thus, while Ms. West has struggled with her sense of self-worth and her ability to support herself, she has also demonstrated the ability to rise above those challenges and be a

8

productive, stable citizen. After losing her job at Kaiser, Ms. West allowed herself to be drawn into illegality in order to make money. But since her arrest, she has found employment again, and she expresses a renewed sense of self-satisfaction and fulfillment because of it. As she wrote, she was "looking for a way out, and catching this case I found it. I have found myself a job and I forgot how good it feels to make a honest living. Getting up and going to work, receiving a check, is such a fulfillment and I don't want to lose that." Exhibit A. The change that Ms. West's newfound stability has brought has not been lost on those close to her. As Denée Adams writes:

> Sophia has also always been a very giving person of herself in so many ways, lending a hand, supporting someone, feeding family and friends, providing a pillow and a blanket to someone going through a struggle with nowhere to go. As long as I've known Sophia, this has been a consistent trait of her and her character. . . . I have known Sophia when she is working, and she is always loyal to her employers with numerous awards and promotions. She is just as good in the work force and she is with her work ethics in any task or challenge given. Now that she's back on her feet I think her past is behind her and she's ready to be the hard worker and good mother we all know.

Adams Letter, Exhibit B. Ms. West's friend Raeshelle Godwin, who has known her since Ms. West was 18 years old, echoes that sentiment: "I know through life's experiences no one is perfect, everybody needs somebody to help them stay on track or get back on the right track and for the friendship that I have with Sophia I am that person for her. I know Sophia has had her troubles but I also know from many conversations that she's in a better place now and on the right track. . . . I don't have any doubt that she's going to continue to do well." Godwin Letter, Exhibit B; *see also* Monti Letter, Exhibit B ("I know she has made mistakes in the past but I have seen for myself how her life and her outlook has improved since this case started.").

This history demonstrates that the reasonable outcome to this case would be a sentence that allows Ms. West to maintain her new-found (or newly re-found) stability. While Ms. West

9

**Defendant's Sentencing Memorandum**
*United States v. West*, CR 15-0290 PJH

does not argue that her criminal history is overstated, it is significant that her only convictions are from periods of instability in her life; given her conduct over the last 15 years, and given that she is stable and working now and at low risk for reoffending, she is an atypical Category III defendant. A sentence of probation would permit her continue working, to be a productive member of society again, and to stay on the law-abiding path that she has demonstrated an ability to follow.

A sentence of probation would also be sufficient to provide specific and general deterrence. Ms. West understands the gravity of her offense and is not at risk of reoffending; as she writes, she "cringes every time" she thinks of what she did. And a reasonable person who might feel tempted to act as a drug mule would be adequately deterred by the prospect of multiple federal convictions, even if those convictions did not carry prison time.

### III. Conclusion

Given the nature and circumstances of this offense and Ms. West's role in it, and given the progress Ms. West has made in getting her life back on track since her arrest, a custodial sentence would be more severe than necessary to achieve the goals of punishment. A probationary sentence would adequately punish Ms. West while allowing her to maintain stable employment and keep her life on track. Accordingly, Ms. West respectfully requests that the Court impose a sentence of probation.

Dated: May 25, 2016                              /s/
                                                 Edward W. Swanson
                                                 August Gugelmann
                                                 SWANSON & McNAMARA LLP
                                                 Attorneys for SOPHIA WEST